Robert C. Moest, Of Counsel, SBN 62166
**THE BROWN LAW FIRM, P.C.**
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
Telephone: (310) 915-6628
Facsimile: (310) 915-9897
Email: RMoest@gmail.com

*Counsel for Consolidated Plaintiffs*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OLAPLEX HOLDINGS, INC. STOCKHOLDER DERIVATIVE LITIGATION | Lead Case No.: 2:23-cv-09712-SVW-SK |
| This Document Relates To:<br><br>ALL ACTIONS. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date: June 1, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 10A |

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................1

II.  FACTUAL BACKGROUND ...........................................................................3

III. PROCEDURAL BACKGROUND AND SETTLEMENT ........................3

   A. The Consolidated Derivative Action.........................................................3

   B. The Demand .................................................................................................5

   C. Settlement Negotiations .............................................................................5

IV.  TERMS OF THE PROPOSED SETTLEMENT ........................................6

V.   LEGAL STANDARDS FOR PRELIMINARY APPROVAL....................8

VI.  THE PROPOSED SETTLEMENT WARRANTS
     PRELIMINARY APPROVAL........................................................................10

   A. The Proposed Settlement is Substantively Fair, Adequate,
      and Reasonable..........................................................................................10

      1. The Benefit of the Settlement ..............................................................10

      2. Strength of the Derivative Matters and the Costs and Risks of
         Further Litigation Considering Stage of Proceedings.................11

   B. The Proposed Settlement is a Product of Informed, Arm's
      Length Negotiations ..................................................................................14

VII. NOTICE TO CURRENT STOCKHOLDERS SATISFIES
     RULE 23.1(c) AND DUE PROCESS .........................................................17

VIII. PROPOSED SCHEDULE OF EVENTS ...................................................18

IX.  CONCLUSION ................................................................................................19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

# **TABLE OF AUTHORITIES**

**Cases**

*Allred v. Walker*,
19-cv-10641 (LJL), 19-cv-10876 (LJL), 2021 U.S. Dist. LEXIS 236249
(S.D.N.Y. Dec. 9, 2021) ....................................................................................17

*Basaraba v. Greenberg*,
No. CV 13-5061-PSG (SHx), 2014 U.S. Dist. LEXIS 207414
(C.D. Cal. Nov. 10, 2014)...................................................................................9

*Booth v. Strategic Realty Trust Inc.*,
No. 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 84143 *16, 2015 WL 3957746
(N.D. Cal. June 28, 2015) ...................................................................................9

*Brooks v. Am. Exp. Indus., Inc.*,
No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) .....16

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................7

*Griffin v. Consol. Commc'ns*,
No. 2:21-cv-0885 WBS KJN, 2023 U.S. Dist. LEXIS 98743
(E.D. Cal. Jun. 5, 2023) ....................................................................................16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)...........................................................................11

*In re AOL Time Warner S'holder Deriv. Litig.*,
Master File No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260
(S.D.N.Y. Sep. 6, 2006) ...................................................................................13

*In re Apollo Grp., Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4,
2008), *rev'd & remanded*, No. 08-16971, 2010 U.S. App. LEXIS 14478.........13

*In re Apple Computer, Inc. Derivative Litig.*,
2008 U.S. Dist. LEXIS 108195, 2008 WL 4820784 (N.D. Cal. Nov. 5 2008)..10

*In re Biopure Corp. Deriv. Litig.*,

2009 U.S. Dist. LEXIS 148025 (D. Mass. Jul. 24, 2009) ...................................18

*In re Cadence Design Sys., Inc. Sec. Litig.*,
No. 08-cv-4966 SC, 2011 WL 13156644 (N.D. Cal. Aug. 26, 2011) ..................9

*In re Fab Universal Corp. S'holder Derivative Litig.*,
148 F. Supp. 3d 277 (S.D.N.Y. Nov. 17, 2015) ....................................................12

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
No. 12-cv-06003-CRB, 2015 U.S. Dist. LEXIS 32212 (N.D. Cal. Mar. 13, 2015) ...........................................................................................................9, 10

*In re Immunitybio, Inc. S'holder Derivative Litig.*,
No. 3:24-CV-02014-GPC-VET, 2025 WL 2147066 (S.D. Cal. July 29, 2025) ........................................................................................................................16

*In re Lloyd's Am. Tr. Fund Litig.*,
96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ........................................................................................................................13

*In re MRV Communs., Inc. Derivative Litig.*,
2013 U.S. Dist. LEXIS 86295 (C.D. Cal. June 6, 2013)....................................17

*In re NVIDIA Corp. Deriv. Litig.*,
No. C-06-06110-SBA-(JCS), 2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 19, 2008)........................................................................................10

*In re NVIDIA Corp. Derivative Litig.*,
No. 06-06110, 2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 22, 2008) ...........................................................................................................8, 12, 13

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)...........................................................................12, 14

*In re Pinterest Deriv. Litig.*,
2022 U.S. Dist. LEXIS 28366 (N.D. Cal. Feb. 16, 2022)....................................9

*In re PMC-Sierra, Inc. Deriv. Litig.*,
No. C-06-05330-RS, 2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010) ........................................................................................................................18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

*In re Rambus Inc. Deriv. Litig.*,
No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20, 2009) ............................................................................................................... 17

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 9

*In re Walt Disney Co. Derivative Litig.*,
907 A.2d 693 (Del. Ch. 2005) ............................................................................. 12

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
No. 16-cv-05541-JST, 2019 U.S. Dist. LEXIS 240004 (N.D. Cal. May 14, 2019) ................................................................................................................... 11

*Kabasele v. Ulta Salon*,
No. 2:21-cv-1639 WBS KJN, 2024 U.S. Dist. LEXIS 21589
(E.D. Cal. Feb. 6, 2024).................................................................................... 14

*Kamen v. Kemper Fin. Servs. Inc.*,
500 U.S. 90 (1991)........................................................................................... 12

*Linney v. Cellular Ak. P'ship*,
151 F.3d 1234 (9th Cir. 1998).......................................................................... 9

*Lloyd v. Gupta*,
No. 15-cv-04183-MEJ, 2016 U.S. Dist. LEXIS 96166 (N.D. Cal. Jul. 22, 2016) ............................................................................................................... 17

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)......................................................................................... 10

*Moore v. Verb Tech. Co.*,
CV 19-8393-GW-MAAx, 2021 U.S. Dist. LEXIS 268915 (C.D. Cal. Mar. 1, 2021) ................................................................................................................. 9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)......................................................................................... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**Statutes**

8 *Del. C.* § 220 ...............................................................................................................1

**Rules**

Fed. R. Civ. P. 23.1(c) ...............................................................................1, 9, 17, 18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Pursuant to Fed. R. Civ. P. 23.1(c) and the Stipulation and Agreement of Settlement dated April 24, 2026  (the "Stipulation" or "Stip."), Plaintiffs Carla Ciuffo ("Ciuffo") and Gwyneth Hutchinson ("Hutchinson" and, together with Ciuffo, the "Consolidated Plaintiffs") in the above-captioned consolidated shareholder derivative action (the "Consolidated Derivative Action") brought on behalf of nominal defendant Olaplex Holdings, Inc. ("Olaplex" or the "Company") respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Stockholder Derivative Settlement (the "Motion").

## I.  <u>INTRODUCTION</u>

Consolidated Plaintiffs are pleased to present for preliminary approval the proposed shareholder derivative Settlement[1] which, following arm's-length, good faith negotiations between the Parties, provides significant benefits to the Company and its shareholders through a series of corporate governance enhancements (the "Reforms"). As set forth in the Stipulation, the Settlement fully and finally resolves all the claims asserted in the Consolidated Derivative Action as well as in a books and records demand pursuant to 8 *Del. C*. § 220 ("Section 220") made by stockholder Kajaal Patel ("Patel" and, together with Ciuffo and Hutchinson, "Plaintiffs") (the "Demand" and collectively with the Consolidated Derivative Action, the "Derivative Matters").

In the Derivative Matters, Plaintiffs assert claims for, *inter alia*, breach of fiduciary duty against the Individual Defendants,[2] for issuing false and misleading statements regarding the Company's use of an ingredient that had previously been banned for use in the European Union, in its flagship haircare products.  Specifically,

---

[1]  Unless otherwise noted, all capitalized terms herein shall have the same meaning as set forth in the Stipulation, which is attached hereto as Exhibit 1.

[2]  Defendants Christine Dagousset, Deirdre Findlay, Tricia Glynn, Janet Gurwitch, Martha Morfitt, David Mussafer, Eric Tiziani, Tiffany Walden, Emily White, Michael White, JuE Wong, and Paula Zusi are collectively referred to as the "Individual Defendants."  Olaplex, the Individual Defendants, and Advent International, L.P. (f/k/a Advent International Corporation) ("Advent") are referred to as "Defendants."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

the Derivative Matters alleged, *inter alia*, that Olaplex did not address its use of a floral fragrance ingredient (the "Relevant Ingredient") in its initial public offering ("IPO") documents and other U.S. Securities and Exchange Commission ("SEC") filings.

Pursuant to the Settlement, Olaplex has agreed to adopt and maintain a series of corporate governance reforms (the "Reforms") that directly address the allegations in the Derivative Matters, including those related to Olaplex's management and oversight over product safety, risk management, compliance, and insider selling. To address these issues, the Reforms include, among other things: (i) the creation of a management-level Enterprise Risk Management and Product Safety Sub-Committee of the Disclosure Committee, charged with overseeing ethics, compliance, and enterprise-risk management policies; (ii) additional responsibilities for the Disclosure Committee through Charter amendments that include identification of material risks to public disclosures regarding Olaplex's products' ingredients and formulations; (iii) increased frequency of meetings of the Board's Audit Committee, including in executive sessions; (iv) stricter oversight for Company insiders to adopt Rule 10b5-1 plans; (iv) the requirement of biannual executive reports; (v) enhanced training for Company employees; and (vi) enhancements to the Company's Whistleblower Policy that improve the facilitation of anonymous reporting for employees. *See* Stipulation, Exhibit A at ¶¶1-6.

Olaplex acknowledges and agrees that the filing, pendency, and settlement of the Derivative Matters were the cause of the Company's decision to adopt, implement, and maintain the Reforms, and that the Reforms confer significant benefits to Olaplex and Olaplex's shareholders. *See* Stip., ¶ 23. The independent directors of the Board, in exercising their business judgment, have also approved the Settlement and each of its terms, as in the best interests of Olaplex. Stip. ¶ 16.

Although Plaintiffs believe in the merits of the Derivative Matters, they recognize that they would face substantial risks in establishing liability and damages

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

should they proceed.  The immediate and lasting benefits conferred by the Settlement––which all Parties agree are significant—far outweigh the remote possibility of future relief that is unlikely to exceed the value of the Reforms.  Accordingly, Plaintiffs believe the Settlement represents an excellent result for Olaplex and its shareholders.

At the preliminary approval stage, the Court need only conclude that a proposed derivative settlement is within the range of resolutions that might ultimately be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to current Olaplex stockholders and that a final settlement hearing should be scheduled.  Consolidated Plaintiffs respectfully submit that the Settlement easily meets this standard and request that the Court enter the [Proposed] Preliminary Approval Order, substantially in the form of Exhibit C to the Stipulation and submitted herewith, which preliminarily approves the Settlement, authorizes the form and manner of providing notice of the Settlement to Olaplex stockholders, and sets a date for the Settlement Hearing.  Defendants do not oppose the Motion or the Court's entry of the Preliminary Approval Order.

## II.    FACTUAL BACKGROUND

The Derivative Matters are brought derivatively on behalf of nominal defendant Olaplex and allege that, *inter alia*, between September 29, 2021 through February 28, 2023, at least, the Individual Defendants made false and misleading statements to investors related to the impact of laws and regulations on Olaplex's business as well as product-safety related risks, including in filings with the Securities Exchange Commission ("SEC") and proxy solicitations governed by Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act").*See* Dkt. No. 1, at ¶¶11-22, 26-30.

## III.    PROCEDURAL BACKGROUND AND SETTLEMENT

### A.    The Consolidated Derivative Action

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

On November 15, 2023, plaintiff Ciuffo filed a shareholder derivative action on behalf of Olaplex in this Court against the Individual Defendants and Advent, captioned *Ciuffo v. Dagousset, et al.*, Case No. 2:23-cv-09712-SVW-SK. *Ciuffo* Action, Dkt. No. 1.

On February 1, 2024, the parties in the *Ciuffo* Action filed a joint stipulation to stay pending a decision on the motions to dismiss filed in the related *Lilien* Action; the Court so-ordered the stipulation on February 8, 2024 (the "Stay Order"). *Id.*, Dkt. Nos. 17, 18.

On March 22, 2024, plaintiff Hutchinson filed a related shareholder derivative action on behalf of Olaplex in this Court against the Individual Defendants and Advent, captioned *Hutchinson v. Advent International Corporation, et al.*, Case No. 2:24-cv-02364 (the "*Hutchinson* Action"). *Hutchinson* Action, Dkt. No. 1.

On April 19, 2024, the Court entered an order: (i) consolidating the *Ciuffo* Action and the *Hutchinson* Action into the Consolidated Derivative Action under the caption *In re Olaplex Holdings, Inc. Stockholder Derivative Litigation*, Lead Case No. 2:23-cv-09712-SVW-SK; (ii) appointing The Brown Law Firm, P.C. and Bragar Eagel & Squire, P.C. as Co-Lead Counsel representing plaintiffs in the Consolidated Derivative Action; and (iii) applying the Stay Order to the Consolidated Derivative Action. Dkt. Nos. 19, 20.

During the stay of proceedings and pursuant to the terms of the Stay Order, Defendants produced confidential documents regarding insurance information to Plaintiffs in the Derivative Matters.

On March 17, 2025, the Court held a status conference with the parties in the Consolidated Derivative Action, during which the Court ordered that the stay would remain in effect pending resolution of the *Lilien* Action. Dkt. No. 27.

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

On May 28, 2025, the Court entered an order lifting the stay as to the master file and restoring it to the active calendar, and ordering that all consolidated derivative actions were stayed and moved into the inactive calendar. Dkt. No. 31.

On February 23, 2026, the Parties filed a Notice of Settlement, informing the Court that the Parties had: (1) reached a binding settlement agreement to resolve the Derivative Matters; and (2) agreed to a mediation on March 18, 2026 to resolve the issue of attorneys' fees. The Parties also requested that the Court set the deadline to file the motion for preliminary approval for April 17, 2026, and continue the stay of proceedings to preserve party and judicial resources. Dkt. No. 32.

On February 25, 2026, the Court vacated all previously set dates and moved the Consolidated Derivative Action to the inactive calendar pending finalization of settlement. Dkt. No. 33. The Court further ordered that the Parties shall proceed with the settlement as outlined in the Notice of Settlement and that, "should the settlement not be finalized within the designated time, the parties shall notify the Court, in writing, and request that the matter be restored to the active calendar." *Id*.

**B.    The Demand**

On March 7, 2025, shareholder Patel sent Olaplex the Demand, requesting inspection of the Company's books and records pursuant to Section 220. Pursuant to the Demand, and following execution of a confidentiality agreement and discussions concerning a scope of production, Defendants produced confidential documents to shareholder Patel. Counsel for Patel reviewed the Section 220 production.

**C.    Settlement Negotiations**

Plaintiffs' Counsel engaged in extensive efforts to resolve the Derivative Matters. On August 5, 2025, Consolidated Plaintiffs sent Defendants a settlement demand letter that, *inter alia*, proposed a settlement framework that included a set of corporate governance reforms.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

In the following months, the Parties engaged in arm's-length, good faith settlement negotiations aimed at resolution of the claims in the Derivative Matters, which included exchanging settlement proposals and counterproposals. Finally, on February 9, 2026, the Parties reached an agreement in principle on the material terms of the Settlement, including the Reforms, and executed a term sheet reflecting the same (the "Term Sheet"). Pursuant to the Term Sheet, Defendants also agreed to produce document discovery to allow Plaintiffs to confirm the fairness and reasonableness of the proposed Settlement.

Following the Parties' agreement in principle on the material substantive terms of the settlement and execution of the Term Sheet, the Parties agreed to participate in a mediation with Michelle Yoshida, Esq. of Phillips ADR (the "Mediator"), a highly experienced and nationally reputed mediator, to negotiate the attorneys' fees and expenses to be paid by Defendants' insurers to Plaintiffs' Counsel in consideration of the significant benefits conferred by the Reforms and the Settlement on Olaplex and Olaplex's shareholders and the work done by Plaintiffs' Counsel to achieve the same (the "Mediation").

On March 18, 2026, the Parties participated in the Mediation. While no final resolution was reached at the Mediation, the Mediator issued a Mediator's Recommendation thereafter, which the Parties accepted, and which resulted in an agreed-to Fee and Expense Amount of $700,000, subject to the Court's approval.2F[3] *See* Stip. at ¶ 15.

## IV.    **TERMS OF THE PROPOSED SETTLEMENT**

If approved, the Settlement guarantees the adoption, implementation, and maintenance of a set of corporate governance reforms designed to address Plaintiffs'

---

[3]    The Court need not decide whether to approve the agreed-to Fee and Expense Amount at this time, as Plaintiffs will provide further detail and additional supporting authorities in connection with their motion for final approval of the Settlement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

allegations in the Derivative Matters regarding alleged failures in the Company's oversight and internal controls, subject to certain conditions. *See* Stip., Exhibit A. Consequently, the Reforms contain provisions specifically designed to: (1) strengthen Olaplex's internal controls regarding disclosures, risk, compliance, and product safety; and (2) enhance the accountability of its Board and management.3F[4] Specifically, the Reforms provide for the following substantial improvements.

First, the Reforms provide for the formation and maintenance of a brand-new management-level Enterprise Risk and Product Safety Sub-Committee of the Disclosure Committee that addresses the core allegations of the Derivative Matters regarding the Company issuing allegedly false and misleading statements regarding the use of the Relevant Ingredient in its products. *See Id.*, Ex. A, ¶ 1.

Moreover, the Reforms address the allegations in the Derivative Matters that a majority of Olaplex's Board could not consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence. To improve the independence and accountability of the Board and management, the Settlement requires that the Audit Committee now meet at least five (5) times annually and in separate executive sessions with certain members of the Company's management. *See Id.*, Ex. A, ¶ 2. The Reforms also provide for a biannual requirement that at Board meetings, the Chief Financial Officer and Chief Executive Officer shall report to the Board about the Company's operations,

---

[4]  The Reforms, which must be implemented within seventy-five (75) days of the issuance of the Judgment by the Court, shall remain in effect for at least three and a half (3.5) years after the Judgment is entered by the Court – sufficient time for the Reforms to become embedded in the Company's policies, practices, and corporate culture – subject to certain conditions. *See* Stip., Ex. A, § I; *Cohn v. Nelson*, 375 F. Supp. 2d 844, 850 (E.D. Mo. 2005) (finding that corporate governance measures which must be in place for no less than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

financial condition, and prospects, including its product-related developments. *See Id.*, Ex. A, ¶ 5.

In addition, to address Plaintiffs' allegations that several of the Individual Defendants engaged in improper insider trading while the Company's stock price was artificially inflated due to Defendants' misconduct, the Settlement mandates that the adoption of a Rule 10b5-1 Plan by a required pre-clearance person must be submitted to the Chairperson of the Company's Audit Committee for pre-approval. *See Id.*, Ex. A, ¶ 3. The Settlement also enforces a minimum length of six (6) months in which the trading plan cannot be cancelled. *Id*. These measures prevent executives and directors from exploiting nonpublic information, reduce legal risks, and improve investor confidence.

Additionally, the Settlement requires Olaplex to adopt certain updates to its training program, ensuring that that all employees are adequately trained on, and kept apprised of, pertinent corporate governance policies and best practices for maintaining the Company's financial integrity. *See Id.*, Ex. A, ¶ 4. The Settlement also sets strict requirements on employee training completion which validates competency and increases productivity. *Id*.

Lastly, the improvements to the Whistleblower Policy, which include, among other things, providing a process for complaints to be brought to the Disclosure Committee, are designed to assure employees and investors that Olaplex is serious about adherence to its ethical and legal obligations. *See Id.*, Ex. A, ¶ 6.

As described below, Courts recognize that corporate governance reforms such as these "provide valuable benefits to public companies." *In re NVIDIA Corp. Derivative Litig.*, No. 06-06110, 2008 U.S. Dist. LEXIS 117351, at \*10 (N.D. Cal. Dec. 22, 2008) (internal quotation and citation omitted)

V.    **LEGAL STANDARDS FOR PRELIMINARY APPROVAL**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Rule 23.1 provides that a shareholder derivative action "shall not be dismissed or compromised without the approval of the court." Fed. R. Civ. P. 23.1(c). "In such cases, courts in this Circuit have generally used the two-step approval process employed in class actions." *Basaraba v. Greenberg*, No. CV 13-5061-PSG (SHx), 2014 U.S. Dist. LEXIS 207414, at *6 (C.D. Cal. Nov. 10, 2014); *see also In re Cadence Design Sys., Inc. Sec. Litig.*, No. 08-cv-4966 SC, 2011 WL 13156644, at *2 (N.D. Cal. Aug. 26, 2011); *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 12-cv-06003-CRB, 2015 U.S. Dist. LEXIS 32212, at *12 (N.D. Cal. Mar. 13, 2015). First, a court must determine whether the proposed settlement merits preliminary approval. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given, a court must determine whether final approval is warranted. *Id.*

During the preliminary approval stage, courts "determine whether the settlement falls 'within the range of possible approval.'" *Booth v. Strategic Realty Trust Inc.*, No. 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 84143 *16, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). Courts must therefore consider "whether the proposed settlement is fundamentally fair, reasonable, and adequate . . . such that it merits an initial presumption of fairness." *Hewlett-Packard*, 2015 U.S. Dist. LEXIS 32212, at *14-15 (internal citations omitted).

Courts consider "a variety of factors as the particular facts of a case demand[,]" including: (i) the amount offered in settlement; (ii) the strength of the plaintiff's case; (iii) the stage of the proceedings; and (iv) the expense and complexity of further litigation. *In re Pinterest Deriv. Litig.*, 2022 U.S. Dist. LEXIS 28366, at *10-11 (N.D. Cal. Feb. 16, 2022) (citing *Linney v. Cellular Ak. P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)); *see also Moore v. Verb Tech. Co.*, CV 19-8393-GW-MAAx, 2021 U.S. Dist. LEXIS 268915, at *8 (C.D. Cal. Mar. 1, 2021). Furthermore, "[t]o determine whether

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

a proposed settlement is within the range of possible approval," the "court also must satisfy itself that the settlement is not the product of collusion among the negotiating parties." *Hewlett-Packard*, 2015 U.S. Dist. LEXIS 32212, at *13, *15.

The Settlement is easily supported under all applicable standards and, thus, merits preliminary approval.

## VI. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Proposed Settlement is Substantively Fair, Adequate, and Reasonable

#### 1. The Benefit of the Settlement

As detailed above, in evaluating a settlement, the Court may look at the value of the benefit conferred on the Company at the time the parties settle. *See Ceradyne*, 2009 U.S. Dist. LEXIS 135508, at *5. It is well-understood that "a corporation may receive a 'substantial benefit' from a derivative suit […] regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, at *395 (1970). Accordingly, "Courts have recognized that corporate governance reforms . . . provide valuable benefits to public companies." *In re NVIDIA Corp. Deriv. Litig.*, No. C-06-06110-SBA-(JCS), 2008 U.S. Dist. LEXIS 117351, at *10 (N.D. Cal. Dec. 19, 2008). Furthermore, it has been long recognized that strong corporate governance reforms, such as those achieved here, also provide value to the Company through increased "market value" and investors who "likely will view such reforms as an additional reason to purchase the stock." *In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195, at *10 (N.D. Cal. Nov. 5 2008).

Here, the Settlement undoubtedly confers significant benefits to Olaplex and Olaplex's shareholders, as the Company agrees. Stip., ¶ 23. Indeed, the Reforms achieved here were specifically designed to enhance the enterprise risk management, product safety, compliance, and disclosure functions at Olaplex.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

As detailed above, the Reforms include, *inter alia*: the establishment of a new Management-Level Enterprise Risk and Product Safety Sub-Committee and Enhancements to the Disclosure Committee to target Plaintiffs' allegations of false and misleading statements issued by Defendants; enhancements to the Audit Committee Charter to mandate that the Audit Committee is required to meet at least five  times annually and have executive sessions with certain members of the Company's management and independent auditor in carrying out its duties; an improved Insider Trading Policy which is designed to prevent insider trading and ensure compliance with SEC regulations; enhanced annual employee training to ensure adherence with the Company's ethical standards and financial integrity; the requirement of biannual executive reports at Board meetings which will allow for high-level transparency between the Board and management; and enhancements to the Whistleblower Policy to provide a safe mechanism for reporting and ensure that employees know their rights to encourage reporting.  *See* Stip., Ex. A.

Through the adoption of these Reforms, the Settlement strengthens Olaplex's overall corporate governance and internal controls, which will provide real, substantial, and long-lasting benefits for Olaplex and its shareholders, and is thus fair, adequate, and reasonable.

> **2.   *Strength of the Derivative Matters and the Costs and Risks of Further Litigation Considering Stage of Proceedings***

Courts in this Circuit, when evaluating a settlement, also consider "'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation.'"  *In re Wells Fargo & Co. S'holder Deriv. Litig.*, No. 16-cv-05541-JST, 2019 U.S. Dist. LEXIS 240004, at *19-20 (N.D. Cal. May 14, 2019) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).While Plaintiffs and their counsel believe the claims alleged in the Derivative Matters are meritorious, derivative cases are "notoriously difficult and unpredictable," strongly favoring settlement as a

matter of public policy. *NVIDIA*, 2008 U.S. Dist. LEXIS 117351, at \*7. As the Ninth Circuit observed in affirming the district court's approval of a derivative settlement, "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, the uncertainties of further litigation balanced against the targeted benefits achieved by the Reforms demonstrate that the proposed Settlement is within the range of approval and warrants Court approval.

From the outset, Plaintiffs faced risks that the Derivative Matters might not have withstood challenges at the pleading stage, especially given Rule 23.1's heightened standards for pleading demand futility. *See In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 281-82 (S.D.N.Y. Nov. 17, 2015) ("The doctrine of demand futility … make[s] shareholder derivative suits an infamously uphill battle for plaintiffs."); *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96 (1991) (establishing demand futility requires "extraordinary conditions"). Additionally, even assuming Plaintiffs could satisfy Rule 23.1, they would still face challenges from Defendants as to whether they adequately stated claims under Rule 12(b)(6) and if unsuccessful, further challenges may ensue in the form of motions for reconsideration or appeals.

Even if Plaintiffs succeeded at the pleading stage, it is anticipated that the Defendants would have fiercely defended the case through motions for summary judgment and trial. Plaintiffs would have faced the high costs associated with lengthy and complex litigation, including voluminous discovery and depositions. Moreover, Delaware's strong business judgment presumption would afford Defendants powerful defenses that would be very difficult to overcome. *See, e.g.*, *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 746-47 (Del. Ch. 2005). Indeed, for these reasons, "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Even a favorable judgment at trial is not a guaranteed outcome as a judgment could be reversed in post-trial motions or on appeal. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010) (post-trial motion finding evidence insufficient to support jury verdict for shareholders of $277 million, reversed and remanded on appeal).   Moreover, the amount of recoverable damages would have posed significant issues.  *See In re Lloyd's Am. Tr. Fund Litig.*, 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages … is a complicated and uncertain process, typically involving conflicting expert opinions," making the outcome "highly unpredictable."); *In re AOL Time Warner S'holder Deriv. Litig.*, Master File No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260, at *15 (S.D.N.Y. Sep. 6, 2006) (the difficulty of "proving highly contested damages" supports derivative settlement approval).  As such, there was great risk that Plaintiffs might not fully prevail.  "Similarly, by reaching a settlement, Defendants have avoided significant risks and costs, including the costs associated with continued litigation, potential liability and exposure to damages, and the distraction that arises as a result of litigation." *NVIDIA*, 2008 U.S. Dist. LEXIS 117351, at *12.

The Settlement eliminates these and other risks, including the risk of no recovery after potentially years of expensive and protracted litigation, while ensuring that the Company and its stockholders obtain immediate and significant benefits through the Reforms. While the Derivative Matters were still early in the procedural stages and the Settlement was reached before formal discovery commenced, the Company produced documentary discovery so that Plaintiffs can ensure the fairness and reasonableness of the proposed Settlement documents, in addition to Company non-public documents in response to the Demand.  *See* Stip., §§ A-B.  The Defendants also produced confidential documents to Plaintiffs during the stay regarding insurance information.

13
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

*See* Stip., §§ A-B.  As such, Plaintiffs have a strong grasp of the underlying facts and alleged misconduct to support their opinion that the Settlement is fair, reasonable, and adequate.  *See Kabasele v. Ulta Salon*, No. 2:21-cv-1639 WBS KJN, 2024 U.S. Dist. LEXIS 21589, at *15 (E.D. Cal. Feb. 6, 2024) (finding that "thorough informal discovery" weighs in favor of settlement approval).

Additionally, the Settlement frees up Company resources and time that would otherwise be spent on litigating the Derivative Matters to instead strengthen the Company's internal controls and operations.  *See AOL*, 2006 U.S. Dist. LEXIS 63260, at *15-16 ("Termination of the litigation at this stage of the proceedings obviat[es] the expenditure of any future time and expense in connection with this action, and will allow the Company to direct its full attention to its substantive business.").  Accordingly, resolution of Plaintiffs' claims is beneficial at this stage.

Weighed against the risks and expense of further litigation, the substantial benefits conferred upon the Company and its stockholders by the Settlement demonstrate that the recovery here is fair, reasonable, and adequate.  Thus, the Settlement should be preliminarily approved.

### B. The Proposed Settlement is a Product of Informed, Arm's Length Negotiations

A "strong presumption of fairness" attaches to a settlement that is the product of arm's-length negotiations between experienced and well-informed counsel.  *Van Der Gracht Rommerswael v. Auerbach*, SACV 18-00236 AG (JCGx), 2018 U.S. Dist. LEXIS 224500, at *9 (C.D. Cal. Nov. 5, 2019); *Villanueva v. Morpho Detection, Inc*, No. 4:13-cv-05390-HSG, 2015 WL 4760464, at *14 (N.D. Cal. Aug. 12, 2015) (A settlement enjoys a presumption of fairness if it "'is recommended by … counsel after arm's-length bargaining.'").  Indeed, the Ninth Circuit has made clear that significant weight should be attributed to the parties' belief that the litigation should be settled on the agreed-upon terms, since "[p]arties represented by competent counsel are better

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Pac. Enters.*, 47 F.3d at 378; *see also Clark v. Ecolab Inc.*, No. 1:07-cv-08623-PAC, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) ("'Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'").

Here, the Settlement was negotiated between experienced and competent counsel possessing a firm understanding of the strengths and weaknesses of the claims and defenses in the Derivative Matters and is the product of significant give-and-take by the Parties following arm's-length negotiations.

Each of the Parties was represented by zealous and able counsel with extensive experience in complex derivative litigation, who have unique insight into the legal and factual issues presented. To fully inform themselves, Plaintiffs' Counsel conducted extensive investigation and analysis, including, *inter alia:* (i) reviewing and analyzing Olaplex's press releases, public statements, and filings with the SEC; (ii) reviewing and analyzing securities analysts' reports and advisories and media reports about the Company; (iii) reviewing and analyzing the pleadings and orders in the *Lilien* Action filed in this Court; (iv) researching the applicable law with respect to the claims alleged and the potential defenses thereto; (v) making an investigation pursuant to Section 220; (vi) reviewing confidential internal corporate documents produced by Defendants; (vii) preparing and filing initial complaints in the Consolidated Derivative Action; (viii) researching and evaluating factual and legal issues relevant to the claims; (ix) engaging in settlement negotiations with Defendants' counsel regarding the specific facts and perceived strengths and weaknesses of the Derivative Matters, and other issues in an effort to facilitate negotiations; (x) researching the Company's corporate governance structure in connection with settlement efforts; (xi) preparing comprehensive written settlement demands and modified demands over the course of the Parties' settlement negotiations; (xii) preparing the Term Sheet; (xiii) participating

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

in a full-day Mediation; and (xiv) negotiating and drafting the comprehensive Stipulation.   Accordingly, Plaintiffs' Counsel were well positioned to negotiate effectively and only entered into the Settlement after undertaking substantial efforts to ensure the Settlement is in the best interest of Olaplex and its stockholders.

Additionally, courts give substantial deference to directors' exercise of independent business judgment, and here, the Settlement was approved by the Board's independent directors. *See, e.g.*, *Brooks v. Am. Exp. Indus., Inc*., No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *10 (S.D.N.Y. Feb. 17, 1977) ("[T]he decision of the [] board to approve this settlement is appropriately afforded certain deference; it is a business judgment with presumptive validity."); Stip., ¶ 16.

Moreover, the Parties and their respective counsel have determined on an informed basis that the proposed Settlement represents a fair, reasonable, beneficial, and practical resolution of highly uncertain litigation, and that its terms fairly account for the risks and potential rewards of the claims being settled. These facts demonstrate that the terms of the Settlement and all related negotiations, including Fee and Expense Amount, were conducted at arm's length, in good faith, and free of collusion.   Thus, the proposed Settlement is presumed fair, adequate, and reasonable and warrants preliminary approval.   *See In re Immunitybio, Inc. S'holder Derivative Litig.*, No. 3:24-CV-02014-GPC-VET, 2025 WL 2147066, at *7 (S.D. Cal. July 29, 2025) ("Given the settlement's benefits to [the company], the Parties' non-collusive negotiation, and the uncertainty and potentially high cost of further litigation, the Court finds the settlement to be sufficiently fair, reasonable, and adequate, and preliminarily approves it at this stage."); *Griffin v. Consol. Commc'ns*, No. 2:21-cv-0885 WBS KJN, 2023 U.S. Dist. LEXIS 98743, at *8 (E.D. Cal. Jun. 5, 2023) ("Given counsel's representation that the settlement reached was the product of arms-length bargaining following extensive informal discovery and with the help of an experienced mediator, this factor weighs in favor of final approval.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## VII.   NOTICE TO CURRENT STOCKHOLDERS SATISFIES RULE 23.1(c) AND DUE PROCESS

Rule 23.1(c) requires that notice of a proposed shareholder derivative settlement be given to shareholders "in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Notice to shareholders "must be 'reasonably calculated under all the circumstances to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Lloyd v. Gupta*, No. 15-cv-04183-MEJ, 2016 U.S. Dist. LEXIS 96166, at *19-20 (N.D. Cal. Jul. 22, 2016) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The Parties have agreed that within twenty (20) business days after the Court's entry of the Preliminary Approval Order, Olaplex shall: (1) post the Notice and Stipulation and exhibits thereto on the SEC Filings portion of Olaplex's corporate website; (2) publish the Notice in a press release with *GlobeNewswire*; and (3) cause the Notice to be filed with the SEC as an exhibit to a Current Report filed on Form 8-K.  Stip., ¶ 25.  The Notice shall provide a link to the SEC Filings portion of Olaplex's corporate website where the Notice and Stipulation and exhibits thereto may be viewed, which page will be maintained through the date of the Settlement Hearing.  *Id.*

The means of notice of the Settlement, as agreed upon here, has been approved as sufficient by courts in numerous shareholder derivative actions across the country, including in this Court.  *See, e.g.*, *Allred v. Walker*, 19-cv-10641 (LJL), 19-cv-10876 (LJL), 2021 U.S. Dist. LEXIS 236249, at *8 (S.D.N.Y. Dec. 9, 2021) (approving settlement after notice was published on *GlobeNewswire*, in an SEC Form 8-K filing, and on the Company's website); *In re MRV Communs., Inc. Derivative Litig.*, 2013 U.S. Dist. LEXIS 86295, at *6 (C.D. Cal. June 6, 2013) (approving settlement where notice was filed as an attachment to a Form 8-K, published on company website, and published for one day in *Investor's Business Daily*); *In re Rambus Inc. Deriv. Litig.*, No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845, at *7 (N.D. Cal. Jan. 20,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

2009) (approving settlement where notice was published on company website and in a press release carried on *Business Wire*, and filed in an 8-K with the Securities and Exchange Commission); *In re PMC-Sierra, Inc. Deriv. Litig.*, No. C-06-05330-RS, 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (approving notice via filing with the SEC, posting on company's website, and publication in the national edition of *Investor's Business Daily*); *see also In re Biopure Corp. Deriv. Litig.*, 2009 U.S. Dist. LEXIS 148025, at *3 (D. Mass. Jul. 24, 2009) (approving derivative settlement where notice program consisted of a Form 8-K SEC filing, a posting on the company's website, and a press release).

Accordingly, the proposed form and plan of notice of the Settlement warrant this Court's approval because they constitute the best notice practicable under the circumstances and satisfy the requirements of Rule 23.1(c), due process, and any other applicable law.

## VIII.  PROPOSED SCHEDULE OF EVENTS

Consolidated Plaintiffs request that the Court establish the dates by which: (i) the notice of the Settlement will be disseminated to Current Olaplex Stockholders; (ii) Current Olaplex Stockholders may object to the Settlement; and (iii) the final Settlement Hearing shall occur.  Consolidated Plaintiffs respectfully propose the following schedule and respectfully request the Court to enter the Parties' [Proposed] Preliminary Approval Order, attached as Exhibit B to the Stipulation and concurrently submitted herewith:

| EVENT | DEADLINE |
|---|---|
| Deadline for Olaplex to: (1) post the Notice and Stipulation and exhibits thereto on the SEC Filings portion of Olaplex's corporate website; (2) publish the Notice in a press release with *GlobeNewswire*; and (3) cause | Within twenty (20) business days after the entry of the Preliminary Approval Order. |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

| EVENT | DEADLINE |
|---|---|
| the Notice to be filed with the SEC as exhibits to a Current Report filed on Form 8-K. | |
| Defendants' Counsel shall file with the Court proof, by affidavit or declaration, of the posting, publication, and filing of the notice of the Settlement. | Within thirty-five (35) business days after the entry of the Preliminary Approval Order. |
| Consolidated Plaintiffs shall file papers in support of final approval of the Settlement and in support of the Fee and Expense Amount. | At least twenty-eight (28) days prior to the date of the Settlement Hearing. |
| Deadline for objections by Current Olaplex Shareholders to be filed with the Court and served on counsel for the Parties. | At least twenty-one (21) days prior to the Settlement Hearing. |
| Consolidated Plaintiffs shall file any response to any objections to the settlement or in further support of final approval. | At least seven (7) days prior to the Settlement Hearing. |
| Settlement Hearing. | At least sixty-five (65) days after the entry of the Preliminary Approval Order. |

This proposed schedule of events is similar to those used in numerous derivative settlements and affords due process to Olaplex's shareholders concerning their rights with respect to the Settlement.

## IX.    CONCLUSION

Given the significant benefits the Settlement provides to Olaplex and its shareholders, Consolidated Plaintiffs respectfully request that the Court enter the [Proposed] Preliminary Approval Order and: (i) preliminarily approve the Settlement;

19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

(ii) approve the form and manner of the notice of the Settlement; and (iii) schedule a date for the Settlement Hearing to consider final approval of the Settlement.

Dated: April 24, 2026                          Respectfully submitted,

                                               **THE BROWN LAW FIRM, P.C.**

                                               */s/ Robert C. Moest*
                                               Robert C. Moest, Of Counsel, SBN 62166
                                               2530 Wilshire Boulevard, Second Floor
                                               Santa Monica, California 90403
                                               Telephone: (310) 915-6628
                                               Facsimile: (310) 915-9897
                                               Email: RMoest@gmail.com

                                               **THE BROWN LAW FIRM, P.C.**
                                               Timothy Brown
                                               767 Third Avenue, Suite 2501
                                               Telephone: (516) 922-5427
                                               Facsimile: (516) 344-6204
                                               Email: tbrown@thebrownlawfirm.net

                                               **BRAGAR EAGEL & SQUIRE, P.C.**
                                               Melissa A. Fortunato
                                               580 California Street, Suite 1200
                                               San Francisco, CA 94104
                                               Telephone: (415) 568-2124
                                               Email:  fortunato@bespc.com

                                               *Co- Lead Counsel for Consolidated Plaintiffs*

20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Consolidated Plaintiffs, certifies that this Memorandum of Points and Authorities contains 5,544 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

**THE BROWN LAW FIRM, P.C.**

*/s/ Robert C. Moest*
Robert C. Moest